MINER, Judge.
Sally Ann Fortner seeks review of an order entered by the Office of Public Assistance Appeal Hearings of the Florida Department of Health and Rehabilitative Services (HRS) upholding an earlier HRS administrative denial of her application for Medicaid benefits. Under the law as it presently obtains, and because we have little choice in the matter, we affirm HRS’s determination, albeit with great reluctance.
Sally Fortner, approximately 30 years of age, and her husband, Milton (Jay), live in rural Cedar Key, a small fishing village off Florida’s upper west coast. Jay is a mechanic and, when she worked, Sally clerked in a gift shop and waited tables and cooked at a local seafood restaurant. The couple have no children and subsist on an annual income that barely reaches the poverty level, if that.
Sally has suffered from diabetes since she was 15 years old and her numerous complications from that disease are undisputed. Her condition has progressed to the point that she has developed peripheral and/or autonomic neuropathy and has full loss of sensation in both feet. She complains also about loss of sensation in her hands. She can stand or walk only two hours out of eight and must exercise preventive care to protect her feet. To relieve the pain in her lower extremities and to stimulate circulation, she is obliged to make frequent changes in position. While retinopathy has not yet set in, Sally is experiencing some impairment to her eyesight. Her autonomic neuropathy has left her with poor fine motor skills and a racking and persistent cough which is exacerbated by odors and fumes. Not surprisingly, Sally is no longer able to cook or wait tables or stand on her feet for long periods selling gifts and notions.
Dr. Quinn, Sally’s treating endocrinologist, expresses the view that, because of her illness, Sally is at severe risk of ulceration and trauma to her feet. Indeed, were she compelled to take the only kind of job her education and experience equip her for, Dr. Quinn opined that she would be at risk of loss of limb. Dr. Quinn also concluded that Sally would never be able to support herself financially because of her disability.
Faced with mounting medical costs and after her available financial resources and those of her family had become nearly depleted, Sally sought assistance from HRS under the medically needy program. Even though she only requested financial assistance to help defray her medicine costs (which run approximately $200 monthly) her claim was administratively rejected by HRS. She appealed this administrative determination to the Office of Public Assistance Appeals. A hearing on her appeal was held and the hearing officer entered an order affirming HRS’s administrative deni *586 al of Medicaid benefits. From this determination, Sally appeals to this court.
At issue here is whether the hearing officer’s conclusions respecting Sally’s disability are supported by competent substantial evidence. In this regard, the appealed order relies primarily on a report prepared by one Dr. Greenburg, a pulmonary specialist, who examined Sally on one occasion. Dr. Greenburg found her eyesight relatively unimpaired and opined that in spite of the complications attendant to her disability, she could “probably” perform some type of sedentary work. In his order, the hearing officer appears to have been uncertain about what Sally’s treating physician, Dr. Quinn, meant when she concluded that Sally’s medical condition, work history and lack of education would consign her to “menial” jobs, the performance of which might result in the loss of her feet. To the contrary, the hearing officer found that, despite her manifest health problems, her work history and her lack of education, there were some 200 recognized unskilled occupations available “in the national economy” which Sally could perform. Thus, the hearing officer concluded that Sally did not meet the definition of disability contained in 20 CFR 416.905 of the Social Security regulations and its Florida counterpart, F.A.C. Rule 10 C-8.200, et seq. which provide that an applicant for benefits under the medically needy program must have a severe impairment rendering him/her unable to do his/her previous work or any other substantial gainful activity that exists “in the national economy”.
The hearing officer further found the question of work opportunities where Sally lives not to be relevant in determining whether Sally is disabled within the meaning and intendment of the above cited rules. Otherwise stated, so long as there exists “in the national economy” a job which Sally might be able to perform, notwithstanding that such a job might be light years away from the Cedar Key area, Sally cannot qualify as a medically needy person.
To say that the present disability requirement for obtaining Medicaid benefits for someone like Sally Fortner under the medically needy program is unrealistic is to understate. Indeed, such a requirement seems almost designed to exclude tens of thousands of younger Americans, who, like Sally, have serious, demonstrable and unre-futed impairments yet are not homebound and bedridden. Despite her testimony that gainful employment in the vicinity of Cedar Key within the restrictions imposed on her by her illness, employment history and educational background is virtually non-existent, Sally will get no state help in purchasing the life sustaining insulin with which she must inject herself twice daily. This is so because in Cleveland, or Boston or perhaps in Miami, there might exist a job for Sally as a “lens matcher” [1] in which one examines and matches colored goggle lenses.
In a case such as this, there is a powerful temptation to craft a judicial remedy to address what we believe to be a wrong but we are mindful of the time-proven legal maxim that hard cases make bad law. This is a hard case and Sally Fortner is a deserving person. We do not fault HRS for its interpretation of applicable eligibility rules and we are bound to give deference to that interpretation as much as we might like to fashion a new rule. If the intent of the Social Security Administration was to exclude the Sally Fortners of this country from needed medical benefits, the “jobs in the national economy” eligibility standard has succeeded. Although Sally will derive scant comfort from today’s decision in her case, perhaps those whose business it is to promulgate rules of eligibility for government funded medical benefit programs will seize upon such cases as impetus to revisit these rules with an eye toward including rather than excluding deserving citizens whose medical conditions are serious and undisputed and whose opportunities to help themselves are limited.
*587 Finding competent substantial evidence to support HRS’s determination in this case, we affirm.
WIGGINTON and WOLF, JJ., concur.

. According to Sally, when an HRS administrator was asked for examples of the kinds of jobs available "in the national economy” which Sally might find, a "lens matcher" job was suggested.